## Wagner *versus* Wagner.

1. The records of the land office showed the location of an application and the survey returned into the office; a warrant afterwards issued called for the first survey and was surveyed and returned in accordance with its call; this primâ facie excluded a vacancy between the two.

2. The fact that the first survey may not have been run on the ground would not affect the second survey.

January 27th 1871.  Before THOMPSON, C. J., AGNEW and WILLIAMS, JJ.  SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Northumberland county* : Of October Term 1870.

This was an action of ejectment commenced, June 9th 1866, by John Wagner against Peter Wagner and others.

The case was tried October 21st 1869, before Wood, P. J., of the 20th district.

The plaintiff gave in evidence application, &c., of George Mantz, February 7th 1815, for 55 acres in Augusta township (the land in dispute); warrant same day; survey June 15th for 49 acres, and allowance and patent, June 13th 1817, to George Mantz for the same lands; deed, May 1st 1818, from Mantz to plaintiff and Michael Deal.  This was also called the Keene tract.

The defendants gave in evidence—survey, March 7th 1783, to Samuel Davis for 308 acres on north side of Shamokin creek; warrant, September 28th 1784, to Thomas Hamilton and Margaret Miller for 200 acres adjoining Samuel Davis and others in Augusta township; October 21st, survey for 290 acres; patent, April 27th 1785, to Hamilton and Miller for same land.  This title by sundry mesne conveyances is in the defendants.  The land claimed by the plaintiff, he alleged, was a vacancy between the Davis on the west and the Hamilton and Miller tract on the east.

The defendant examined Abraham Shipman, a surveyor, who said that in July 1868 he had examined the lines of Davis's survey and of the Hamilton and Miller; they were both made on the ground; did not find marks on the ground counting precisely to the date of the survey; on the eastern line of the Davis he found a fallen tree which counted eighty-three years; the Hamilton and Miller survey was made on the ground; the eastern line of the Davis and the western line of the Mantz is the same; there were no marks on the western line of the Hamilton and Miller, nor any to show that it had been run.

David Rockafeller, a surveyor, testified that he made several surveys, the last with Shipman in 1868; his survey and Shipman's exactly agreed; the Davis survey was a chamber survey, it is surrounded on all sides by older surveys except the eastern

[Wagner *v.* Wagner.]

line; the oldest marks on the west end of the Hamilton and Miller survey counted sixty-seven years.

The plaintiff gave evidence that about forty-five years before trial, defendants Peter Wagner and Deal were working on the land in dispute, and that it had been leased by them.

Elias Brosious testified that Peter Mantz, one of the intermediate owners of the land, sold it to Abram Brosious, the father of witness, in or about 1831; at the time of the sale Mantz said to Abram Brosious that there was another line west, "if any one will take it up and bring suit against Keene he will gain the land; I am getting too old and do not want to go into a lawsuit about it;" he claimed to a line further west than he sold to Abram, but did not want to go into a lawsuit.

There was evidence on both sides as to the occupancy of the land.

The plaintiff asked the court to charge:—

2. That if the jury believed the Hamilton and Miller survey was not originally run on the ground so as to adjoin the Davis survey and cover the land in controversy, they must find for the plaintiff.

3. That if the jury believed that the western line of the Hamilton and Miller survey was left open when the warrant was executed, and that the warrantee and those claiming under him since the survey have adopted the line marked on the ground sixty-eight years ago, as stated by Shipman and Rockafeller, the defendants are restrained from claiming west of that line.

4. That if the jury believed that the owners of the Hamilton and Miller adopted the line of 1802, as stated by Shipman and Rockafeller, and since then for more than fifty years claimed only to this line, they have abandoned their rights west of this line, and the plaintiff is entitled to recover.

The court answered:—

"2. When a warrant calls for an older survey and the line adjoining the older is not run on the ground and the younger is returned into the land office, calling for the older as its adjoiner, it will be carried to the line of the older survey; and in this case the Hamilton and Miller warrant and survey being younger than the Davis and calling for the latter as its western boundary, and there being no evidence showing any marks or monuments on the ground that would restrain or limit its call, its location would have governed by its calls, which would carry the western end of the Hamilton and Miller to the Davis. This being the proper way to locate the Hamilton and Miller warrant, would leave no vacancy between the Davis and the Hamilton and Miller for the Mantz warrant to be laid on.

"3. There is no such evidence in this cause as abandonment or a re-survey and throwing out part of the land included in the original survey, as would divest the title of the owner of the war-

[Wagner *v.* Wagner.]

rant and make a vacancy between the Davis and the Hamilton and Miller warrants: On the other hand the plaintiff has proved by Elias Brosious, that Peter Mantz under whom the defendants claim, said, in 1831, that he would not sell beyond a certain line, it being the eastern line of the Mantz survey, but that he claimed to the other line further west, but would not sell further than this line as he did not wish to have a lawsuit; this would show that he did not intend to abandon his claim to adjoin the Davis survey, and would not be such an abandonment as would make the land vacant.

"4. We answer this point as we have done the 3d, and instruct you that under all the evidence the plaintiff is not entitled to recover."

The verdict was for the defendants.

The plaintiff removed the record to the Supreme Court, and assigned the answers to his points for error.

*S. B. Boyer*, (with whom were *G. Hill* and *S. P. Wolverton*) for plaintiff in error, cited as to 2d point: Brolaskey *v.* McClain, 11 P. F. Smith 146; as to the 3d and 4th: Sweigart *v.* Richards, 8 Barr 436; Martz *v.* Hartley, 4 Watts 261; Walker *v.* Smith, 2 Barr 43; Hall *v.* Tanner, 4 Id. 244.

*J. W. Comly* (with whom was *G. W. Ziegler*), for defendants in error, cited Mahon *v.* Duncan, 1 Harris 459; Caldwell *v.* Holler, 4 Wright 161; McGinnis *v.* Porter, 8 Harris 80.

The opinion of the court was delivered, March 30th 1871, by

THOMPSON, C. J.—Certified copies of official surveys, connected and separate, given in evidence on the trial below, and now before us, very conclusively show, that the Samuel Davis application, referred to in the testimony, was located in 1783, and the survey duly returned into the land office; that the Thomas Hamilton and Margaret Miller warrant, issued on the 25th September 1784, called for the Davis survey, and was surveyed and returned into the office in accordance with its call, to wit: as adjoining the Davis survey. This primâ facie excluded the possibility of a vacancy between these surveys; and unless the state of facts was rebutted in some way, the Commonwealth had from thenceforth no unappropriated lands between these tracts, and could confer no title upon any subsequent grantee from her, claiming independently of the warrantees mentioned. There was not the slightest testimony in the case to show that the Hamilton and Miller warrant was actually located short of its call; the consequence of which is, that it was carried to the Davis survey upon principles too well settled to be for a moment doubted. There are many adjudicated cases to this effect: Hall *v.* Turner, 2 Barr 244; Younkin *v.* Cowan, 10 Casey 198; Bellas *v.* Cleaver, 4 Wright

260; Caldwell *v.* Holler, Id. 160. The fact, if true, that the eastern line of the Davis survey was never run upon the ground, nor calls for any natural or artificial boundary on that side of the tract, amounts to nothing in this case. In that category it will be located by its courses and distances, and to this point the Hamilton and Miller will go. With whichever tract the Mantz warrant interferes, whether with the Davis or Hamilton and Miller, the patent from the Commonwealth conferred no title on him or those claiming under him. None of the cases cited by the learned counsel for the plaintiff in error militate in the least with the doctrine herein settled, and they need not be further analyzed.

The learned judge below very properly refused to leave to the jury the question of abandonment by the owners of the Hamilton and Miller warrant and the adoption of a line run in 1802 between the Davis and the Hamilton and Miller tract. Evidence was entirely wanting to establish this theory. For what purpose this line was run, or by whom or in whose interest, is not shown. Nor was the presumption against abandonment by a party who had bought and paid for land overcome by a single fact. There is no pretence that this line was officially run on an order of resurvey. It had therefore no official character or sanction by either of the owners of the adjoining warrants, and it was not claimed that the plaintiff had title by adverse possession.

We see no error in any part of the record, and

The judgment must therefore be affirmed.